LEO E. PHILLIPS *vs.* WILLIAM H. McSOLEY, *Ex'r.*

JULY 9, 1947.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This action in assumpsit was brought by a husband to recover upon a claim against the estate of his deceased wife.   After a trial in the superior court, a jury returned a verdict for the plaintiff and thereafter the trial justice denied the defendant's motion for a new trial.   The case is before this court upon the defendant's bill of exceptions to certain rulings made during the course of the trial; to the denial of his motion for a directed verdict; to a portion of the charge to the jury; and to the denial of his motion for a new trial.

Ethel L. Phillips, wife of the plaintiff, died October 15, 1943 leaving a last will and testament in which the defendant was named as executor.   The will was duly probated and the defendant was appointed and qualified as executor thereunder.   At the time of her death, the testatrix was the owner of certain personal property, which was inventoried at $5505.63, and also two parcels of real estate.   By her will she devised one of such parcels to her husband, the plaintiff, and the other parcel and the residue of her estate to her sister, Minnie F. Praught.

The plaintiff first filed a claim on December 8, 1943 in

the amount of $1493.28, which was captioned: "Claim of Leo E. Phillips. Estate of Ethel L. Phillips to William H. McSoley, Dr." Subsequently, on May 18, 1944, he filed another claim properly against the estate of his wife for the same amount and items. These claims were duly disallowed on June 1, 1944 by Minnie F. Praught, residuary legatee under the will. Thereafter, and within the statutory period, plaintiff brought this action in assumpsit against the defendant as executor of the will to obtain reimbursement for payments made by him for funeral and other expenses of the deceased, as claimed.

The evidence for the plaintiff in general tends to show that, after his wife's second operation, she told the plaintiff of the contents of the will she had made and specifically requested him as follows: "Q. As you recall it, what did she say to you? . . . A. Well, the reason she pointed out to me I should do what she asked me to do was the fact that these bills of the funeral expenses were not paid in two different occasions of our friends. . . . Q. What was the request she made of you? A. She said, 'Don't wait for the will to be taken care of to pay these bills. Be sure that every one of the bills are paid just as soon as you can after my burial.' Q. Now, did she give you any reason for making that request? A. It was the fact that she knew those things sometimes were not taken care of properly. She wanted to have it taken care of. She said she would feel better, and I felt better about it."

He testified that, pursuant to this instruction and with the expectation of being reimbursed, he paid certain bills for the funeral, for medical and professional services, and other expenses as set forth in the claim filed against the estate. He also testified that he alone had attended to the payment of these and other bills during the period from May, 1943 to the time immediately after his wife's death, October 15, 1943. These bills totaled $2320.93 and were all paid by him out of a common fund which was customarily kept in a receptacle in the china closet in the house.

Both his wife and himself had contributed moneys to such fund. According to the plaintiff, he had contributed one lump sum of $800 on May 25, 1943, when he had sold his car. He also testified as to some other possible contributions by him which might have been in the fund, but the amount thereof he did not specify.

He further testified that in addition to his contribution of $800 there was an admitted $1000 of his wife's money, which had been withdrawn from her own bank account, and, further, "there definitely was income, money, bills, in the house in the china closet which represented payments made by tenants . . . for rent", but not as much as $800 as claimed by defendant. He stated elsewhere that four tenants of her realty paid a total rental of $131 or $136 monthly; that he never counted the money in the fund in May, when he contributed $800 from the sale of his car, or at any other time; and that: "I know of the $1000. That is all I do know. In addition there may be other things. I didn't know. . . . I can't tell you it was Mrs. Phillips' money or my money. All I know, I used the money that was there."

The testimony for the defendant tended to show that the plaintiff, when he appeared at the defendant's office to sign a petition for probate of the will, notified the defendant that he had already paid the bills in evidence and that he had done so believing that it was his moral duty. He apparently did not then mention that his wife had instructed him to pay these bills promptly, regardless of the provisions of the will, and to seek reimbursement therefor from her estate. The contention of the defendant generally is that the plaintiff had acted as a mere volunteer or intermeddler with the executor's function and that, in any event, he had not proved that these payments were made from his own money, which was prerequisite to reimbursement from the estate.

The jury returned a verdict for the plaintiff in the full amount of the claim as filed, namely, $1493.28 plus interest

from the date of the writ, making a total award of $1629.42.

In view of our ultimate conclusion that a new trial should be ordered, we shall assume that there was no prejudicial error connected with any of the trial justice's rulings upon evidence during the course of the trial, and we shall discuss only the defendant's exceptions to the denial of his motion for a directed verdict, to a portion of the charge, and to the denial of his motion for a new trial.

The defendant's thirteenth exception is to the denial of his motion for a directed verdict. He does not contend that the claims for funeral bills and expenses of the last illness were improper in amount or otherwise as charges against the estate, or that they would not have been paid by the executor in the ordinary course of his administration if they had been presented to him directly. The plaintiff's good faith, apparently, is not directly questioned and substantially all of the bills were paid before the petition for probate and the defendant's appointment and qualification as executor. Such payments were made, as he claims, in reliance upon the alleged specific instructions to him by his wife to make the payments, notwithstanding the directions in the will, in order to take care of her creditors promptly.

The defendant merely contends that in making payment of these claims with full knowledge of the will and its provision for the payment of debts, *etc.* by the executor, and being under no compulsion, the plaintiff acted as a pure volunteer who could not recover. In support of his contention he relies on *Fairbanks* v. *Mann*, 19 R. I. 499, and *Lyons* v. *Taylor*, 52 R. I. 305. Ordinarily this would be true. But if the evidence is considered from the viewpoint most favorable to the plaintiff, as must be done upon a motion of this kind, it would be difficult to call him a pure volunteer and intermeddler, provided the payment of the bills had been made in accordance with the testatrix's specific direction, in good faith, with his own money and without loss to the estate. Whether or not he acted under such instructions or was a volunteer was an issue of fact

for the jury to determine upon the pertinent evidence. Whether the payments were made in the expectation by his wife that he would make claim against the estate for reimbursement was another issue; and whether plaintiff used his own money to pay all of the bills, as he testified, was a further issue of fact to be determined by the jury.

That is not to say that the evidence required conclusions on the above-mentioned issues in favor of the plaintiff, but merely that they could reasonably be made upon a view of the evidence most favorable to him. If that be so, and if plaintiff's evidence is believed, there seems to be an element of instruction to the plaintiff in this case which does not appear in, and which differentiates it from, the facts of the cases relied upon by the defendant, *supra*. In our opinion there were conflicting evidence and inferences upon which material issues of fact were presented for determination by the jury. The defendant's thirteenth exception is therefore overruled.

The defendant's fourteenth exception is to a certain portion of the charge in which the defendant complains that the trial justice presented only one of the necessary issues, namely, whether or not the plaintiff had acted as a volunteer in paying these bills. It is contended that he failed entirely to instruct the jury that the plaintiff must have paid these bills *with his own money* before he could recover. The trial justice did emphasize the issue of whether or not the plaintiff was a volunteer, but we cannot say that he failed entirely to instruct the jury on the necessity for plaintiff to show payments with his own money. While he did not use the specific language suggested by the defendant's contention, he did instruct the jury that, if they "find that the plaintiff paid these bills he now sues for to recover from the estate of his late wife, out of moneys of his late wife", their verdict should be for the defendant. When the charge is read as a whole, we think that this instruction would be understood to mean that plaintiff must prove that he had paid the bills with

his own money and not with his wife's money before he could recover. Defendant's fourteenth exception is overruled.

The defendant's fifteenth exception is to the denial of his motion for a new trial. The trial justice's duty upon such a motion is to pass his independent and experienced judgment upon the credibility of the witnesses and the weight of the testimony in the light of the law as given to the jury. *Nichols* v. *New England Tel. & Tel. Co.,* 57 R. I. 180. In the instant case he held in effect that, when the evidence is such that different minds may reasonably and fairly come to different conclusions therefrom, the trial justice should not disturb a verdict of a jury even though his own personal judgment might incline him to a contrary conclusion, citing *Anderson* v. *Johnson,* 59 R. I. 241. That is substantially a correct statement of the law, *provided* the trial justice does not misconceive or overlook material evidence in concluding that it is so nearly balanced that the setting aside of the verdict would amount to merely substituting his own personal judgment for that of a jury.

But here the trial justice could have come to such conclusion only by overlooking his instruction to the jury, or by misconceiving the weight of the evidence. He had instructed the jury in effect that they must find that the plaintiff was not a volunteer and had paid these bills out of his own money before he would be entitled to reimbursement from the estate. The testimony of the plaintiff shows payment of bills by him in the total amount of $2320.93 out of the common fund. He has specifically accounted for only $800 as belonging to himself and contributed by him to such fund that was kept in the house and customarily used for such purposes. Any other contribution by him is vague and the amount is nowhere specified.

Morever, the plaintiff admitted that there was in the fund $1000 of his wife's money, and a further amount definitely representing the income from rentals of her property. Elsewhere he stated such rentals were at the

rate of $131 or $136 per month. He alone had used the money kept in this common fund with which he paid all the bills and no money had been turned over to the executor. In these circumstances, it is obvious that the evidence was not nearly in balance on the question of his paying with his own money the entire amount of the bills in the claim. At most, without unjustifiable speculation, his contribution of $800, if entirely believed, would have paid slightly over one third of the total sum of $2320.93. On that computation plaintiff could only recover a proportionate part of the claim as filed. Because of the nature of certain of the bills, the intermingling of plaintiff's and his wife's moneys in one fund, and other evidence, it is not open to plaintiff, who has the burden of proof, to arbitrarily allocate his wife's contributions to payments of certain bills for services to her before her death and to reserve all of his $800 contribution to the fund to be used for funeral expenses, *etc.*, as claimed herein.

The trial justice further misconceived the evidence when he apparently speculated that the $1000, which had been withdrawn from the bank on the order of plaintiff's wife, might have been withdrawn and used for the purpose of paying the wife's sister for her services. The inference is that such $1000 may never have been contributed to the common fund. But this ignores the admission of the plaintiff that he was aware of such withdrawal; that this money actually went into the common fund and was used by him with other money therein to pay all the bills totaling $2320.93. Unless that $1000 and rentals were in the fund, it is difficult on this record to see how plaintiff's $800 could have paid all such bills, or even those totaling $1493.28, the amount of the claim.

Since the evidence strongly preponderates against a verdict, at least so far as it relates to the full amount of the claim, we are of the opinion that a new trial upon all issues should be ordered.

The defendant's fifteenth exception is sustained, all of the

other exceptions are overruled, and the case is remitted *t* the superior court for a new trial.

Moss, J., did not participate in the decision.

*Hurley, 'Moriarty & Connly, Walter V. Moriarty* 1 plaintiff.

*Edward M. Brennan* for defendant.